UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPER BUTANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:13CV1652HEA |
| ) | |
| WELLS FARGO, N.A., ) | |
| ) | |
| Defendant. ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. No. 5]. Plaintiff opposes the Motions. For the reasons set forth below, the Motion is denied.

## Facts and Background[1]

Plaintiff's Complaint alleges the following facts:

On July 12, 2006, Plaintiff obtained a 30-year adjustable rate mortgage loan for his personal residence at 5203 Shetland Drive from Wells Fargo. The initial interest rate was 8.250%, with initial monthly payments to by $2,231.27. By March 2010, due to increased interest, the monthly payments on Plaintiff's

---

[1] The recitation of facts is taken from Plaintiff's Complaint and is set forth for the purposes of this motion only. The recitation in no way relieves the parties of the necessary proof of facts in later proceedings.

1

mortgage had risen to $2,804.61. Plaintiff, unable to make this increased payment, contacted Defendant to request a mortgage modification.

On March 29, 2010, Defendant offered to modify the loan, in effect reducing the monthly payments to $2,346.85. Plaintiff accepted and made the required payments.

Defendant did not make the offered modification. Instead, it accepted and applied the new monthly payments toward the principal and interest on the loan, but the amount paid did not cover the amount Defendant charged every month, creating a monthly "deficiency." Defendant also allowed the hazard insurance and county taxes to go unpaid. By January 2011, these "deficiencies" created additional unpaid mortgage shortage of $12,704.93 and an escrow account in the amount of $7,134.16.

Including the "deficiencies" created by Defendant's failure to modify the mortgage as offered, Plaintiff's monthly payments came to $3,397.14. Again Plaintiff contacted Defendant to request a modification. On May 6, 2011, Defendant again agreed to a modification under forbearance, reducing Plaintiff's monthly payments to $2,119.85. But again, when Plaintiff accepted, Defendant did not make the promised modification, resulting in further "deficiencies."

Defendant began foreclosure proceedings on the property.

Discussion

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft *v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A plaintiff need not provide specific facts in support of its allegations, *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir.2008) (citing *Twombly,* 550 U.S. at 555 & n. 3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556.

Claims of fraud have a heightened pleading standard. The Federal Rules of Civil Procedure require a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). *See also Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 920 (8th Cir.2001). Although a pleading alleging fraud need not provide anything more than notice of the claim, it must contain "a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Id.* Thus, a plaintiff must plead "'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Id.* (*quoting Bennett v. Burg,* 685 F.2d 1053, 1062 (8th Cir.), *adhered to on reh'g,* 710 F.2d 1361 (8th Cir.1982) (en banc)). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. v.Quality Inns,* 61 F.3d 639, 644 (8th Cir.1995). *See also Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, (8th Cir.2002).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Twombly,* 550 U.S. at 556, and reviews the complaint to determine

whether its allegations show that the pleader is entitled to relief. *Id;* Fed.R.Civ.P. 8(a)(2).

*Breach of Contract*

Count I of the Complaint is brought for breach of contract alleging that, at Plaintiff's request, Defendant offered to modify the mortgage, Plaintiff accepted the offer and both parties gave adequate consideration. Count I further alleges that Defendant refused to abide by its promise of a permanent modification. Count II is brought under a promissory estoppel theory. It alleges that Defendant promised that if Plaintiff agreed to the offered modification and fully complied, Defendant would accept the reduced payments going forward for the life of the loan. Count III is a claim for fraudulent misrepresentation, in which Plaintiff claims that in the proposed modifications that it signed and sent to Plaintiff, Defendant intentionally misrepresented to him that if he agreed to the terms, Defendant would modify the mortgage to reduce the monthly payment amounts. Plaintiff alleges that defendant had no intention of modifying Plaintiff's mortgage.

Defendant urges dismissal for failure to state a claim arguing that Plaintiff has alleged a forbearance agreement which does not equate with a modification of Plaintiff's loan. Defendant is in essence arguing that the facts of this case do not support Plaintiff's claims. This argument however is no manner ripe for

consideration. A motion to dismiss for failure to state a claim tests the sufficiency of the Complaint; the Court's role at this time is to determine whether Plaintiff's Complaint sets out a claim for relief.

Under Missouri law, it is patently clear that a breach of contract action requires a plaintiff to allege the existence and terms of a valid and enforceable contract between the plaintiff and defendant; the rights of the plaintiff and the obligations of the defendant under the contract; breach of the contract by the defendant; and damages suffered by the plaintiff due to the breach. *Holmes v. Kansas City Missouri Board of Police Commissioners,* 364 S.W.3d 615, 622 (Mo.App.2012); *Teets v. American Family Mut. Ins. Co.,* 272 S.W.3d 455, 461 (Mo.App.2008); *see also, Cento v. Allstate Prop. & Cas. Ins. Co.,* 2013 WL 64752, *3 (E.D.Mo. Jan. 4, 2013) (citing *Teets, supra.*); *Bakhtiari v. Al–Khaledy,* 2011 WL 6945107, *4 (E.D.Mo. Dec. 30, 2011) (citing *Teets, supra.*); *Midwest Special Surgery, P.C. v. Anthem Ins. Companies,* 2010 WL 716105 at *6 (E.D.Mo. Feb. 24, 2010) (citing *Teets, supra.*). A party "fails to state a claim for breach of contract [if] it does not set out [the claimant's] rights or [the defendant's] obligations under the contract." *Trotter's Corp. v. Ringleader Restaurants, Inc.,* 929 S.W.2d 935, 941 (Mo.App.1996); *Cento,* at *3 (quoting *Trotter's Corp., supra.*); *Bakhtiari,* at *4 (quoting *Trotter's Corp., supra.*); *Midwest Special*

*Surgery,* at \*6 (quoting *Trotter's Corp., supra.*). Vague references to unspecified "agreements" are insufficient to state a claim for breach of contract. *Midwest Special Surgery,* at \*6; *Cento,* at \*3 (citing *Midwest Special Surgery, supra.*); *Bakhtiari,* at \*4 (citing *Midwest Special Surgery, supra.*).

The essential elements of a valid contract are offer, acceptance, and bargained for consideration. *Miller v. Dombek,* 390 S.W.3d 204, 207 (Mo.App.2012); *Marzette v. Anheuser–Busch, Inc.,* 371 S.W.3d 49, 52 (Mo.App.2012); *Holmes,* at 622 (*citing Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 662 (Mo.1988)); *Doran v. Chand,* 284 S.W.3d 659, 664 (Mo.App.2009). "Consideration generally consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Miller,* at 207 (quoting *Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15, 25 (Mo.App.2008)); *Marzette,* at 52 (quoting *Frye v. Speedway Chevrolet Cadillac,* 321 S.W.3d 429, 438 (Mo.App.2010)). A promise to do that which a party is already legally obligated to do cannot serve as consideration for a contract. *Miller,* at 208; *Doran,* at 665.

While the evidence in this matter may ultimately translate into facts which may establish that the "loan modification" was realistically a forbearance agreement which did not entitle Plaintiff to a permanent modification, the Court

7

cannot at this time so find. Plaintiff has set out the essential allegations for stating a claim for breach of contract for the purposes of Rule 12(b)(6). He alleges offer, acceptance and consideration-elementary Hornbook law . Without the actual documentation setting out the terms of the parties' agreement, the Court cannot assume, as Defendant urges, that the modification was not sufficient to modify Plaintiff's loan. The motion will be denied at this time.

*Promissory Estoppel*

Plaintiff contends that he detrimentally relied on the promise of the modification that he would receive a permanent loan modification. He further argues that he detrimentally relied on this promise because he didn't use the money that he used for payments for other avenues of resolution such as funding bankruptcy plans, relocation costs, short sales, or otherwise curing the default so as to halt any foreclosure proceedings by the defendant.

Defendant argues that it kept its promise to accept the lower payment and that Plaintiff was aware that the "forbearance agreement" was only temporary in alleging that the "Special Forbearance Agreement" served to lower Plaintiff's monthly mortgage payment during a time of temporary financial hardship. Defendant's argument, however, fails to give place any weight on the allegation that Defendant promised to continue accepting the reduced payments going

forward for the life of the loan. Defendant cannot use some of Plaintiff's allegations for its position while dismissing others that controvert it.

Under Missouri law, a claim for promissory estoppel allows the courts to enforce a promise on equitable grounds even if the parties have not entered into a contract. *The 1861 Group, LLC v. Wild Oats Markets, Inc.,* 728 F.Supp.2d 1052, 1059 (E.D.Mo.2010) (citing *City of St. Joseph v. SW Bell Tel.,* 439 F.3d 468, 477 (8th Cir.2006)). Promissory estoppel requires: 1) a promise; 2) on which a party relies to his or her detriment; 3) in a way the promisor expected or should have expected; and 4) resulting in an injustice that only enforcement of the promise could cure. *Freitas,* 703 F.3d at 440–41; *The 1861 Group,* at 1059; *Clevenger v. Oliver Ins. Agency,* 237 S.W.3d 588, 590 (Mo.2007); *Glenn, MD, et al. v. HealthLink HMO, Inc., et al.,* 360 S.W.3d 866, 877 (Mo.App.2012); *Birkenmeier,* at 388–89; *see also, Meng v. CitiMortgage,* 2013 WL 1319008, at *7. "In Missouri, promissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." *Glenn, MD.,* at 877 *quoting Clevenger,* at 590; *Birkenmeier,* at 389. The doctrine of promissory estoppel should be applied "with caution, sparingly, and only in extreme cases to avoid unjust results." *The 1861 Group,* at 1059 *quoting City of St. Joseph,* at 477.

The promise giving rise to the claim for promissory estoppel must be definite and the promise must be made in a contractual sense. *Clevenger,* at 590 (citation omitted).

> [a] promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promisee in understanding that a commitment has been made. A promise is the promisor's expression of an intention to bring about a specified result in the future. The promise must be definite and made in a contractual sense. A supposed promise that is wholly illusory or a mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance.

*Freitas,* at 440 *quoting City of St. Joseph, supra.* Finally, under Missouri law, "the promise element cannot be based on preliminary negotiations and discussions or an agreement to negotiate the terms of a future contract." *The 1861 Group,* at 1059–60 *citing Prenger v. Baumhoer,* 939 S.W.2d 23, 27 (Mo.App.1997). Missouri law requires "a promise be as definite and delineated as an offer under contract law." *Freitas,* at 440 *quoting Prenger, supra.*

Plaintiff alleges that he was promised a permanent modification, that he relied on the promise and that he suffered damages as a result of Defendant's failure to satisfy its promise. Notwithstanding that the Court does not have the documentation of the alleged modification, the Court cannot simply dismiss Plaintiff's claim because Plaintiff may be unable to ultimately prove his allegations. Once again, at this early stage of litigation, the Court looks solely at

the allegations contained in the Complaint to determine whether, assuming the truth of the facts alleged, Plaintiff states a claim. Count II satisfies this standard.

*Fraudulent Misrepresentation*

The elements of fraudulent misrepresentation are: a representation; its falsity; its materiality; the speaker's knowledge of its falsity or ignorance of its truth; the intention of the speaker that it should be acted on by the person in the manner reasonably contemplated; the hearer's ignorance of the falsity of the representation; reliance on the representation being true; the hearer's right to rely on the representation; and injury that is consequently and proximately caused thereby. *Freitas,* 703 F.3d at 438-39.

Both parties recognize that a claim for fraudulent representation must be pled with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. "'[R]ule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Id*, quoting, *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). The Court agrees with Plaintiff that the particularity requirement of Rule 9(b) have been met. Plaintiff pleads that Defendant falsely promised a permanent loan modification on March 29, 2010 and May 6, 2011, through the written and oral communications and delivered merely a harmful forbearance agreement causing higher later mortgage payments, penalties

and the threat of foreclosure. These allegations state the who, what, when, where, and how of the alleged fraudulent misrepresentation. As such, it complies with Rule 9(b). The motion to dismiss Count III is denied.

## Conclusion

Based upon the foregoing analysis, the Court finds that Plaintiff's Complaint satisfies the pleading requirements to state Plaintiff's claims. Under the applicable pleading standards, the Motion to Dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 5], is **DENIED.**

Dated this 10th day of July, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE