IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPER BUTANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13-cv-01652-HEA |
| ) | |
| WELLS FARGO, N.A., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS & PLAINTIFF'S STATEMENT OF UNCONTROVERTEDFACTS**

Comes now Plaintiff, by and through counsel, and for his response to Defendant's Statement of Facts in Support of Defendant's Motion for Summary Judgment, states:

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS**

1. On July 12, 2006, Plaintiff Christopher Butano ("Butano") refinanced an existing loan and executed an adjustable rate note ("Note") in the amount of $297,000.00, secured by a deed of trust ("Deed of Trust") on the property commonly known as 5203 Shetland Drive, Weldon Spring, MO 63304. (Compl. ¶ 9; Dep. of C. Butano, excerpts and exhibits attached hereto as Exhibit 1, 15:16-16:8, 17:12-19:11 & Ex. A (Note), Ex. B (Deed of Trust)).

**RESPONSE: Admitted.**

2. In January 2008 Butano filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Missouri. (Voluntary Petition, attached hereto as Exhibit 2; Dep. of C. Butano, 22:4-8.)

**RESPONSE: Admitted.**

3. Butano's bankruptcy action was later dismissed in August 19, 2010, for failure to make plan payments. (Post-Confirmation Order and Notice of Dismissal, attached hereto as Exhibit 3).

**RESPONSE: Admitted.**

4. Contrary to the allegations in the Complaint, Butano did not enter into a loan modification agreement in March 2010 (when he was in bankruptcy). (See Plaintiff's Answers to Defendant Wells Fargo Bank N.A.'s First Set of Interrogatories Directed to Plaintiff ("Interrogatory Answers"), attached hereto as Exhibit 4, Answer No. 3. Contra Compl. ¶ 10).

**RESPONSE: Admitted.**

5. With leave of the bankruptcy court, however, on July 22, 2010, Butano signed a loan modification agreement with Wells Fargo ("July 2010 Loan Modification"). (Dep. of C. Butano 30:16-31:16 & Ex. F (July 2010 Loan Modification); Interrogatory Answer No. 3; Order Granting Motion for Relief From Stay to Enter Into Loan Modification Agreement, attached hereto as Exhibit 5).

**RESPONSE: Admitted.**

6. The July 2010 Loan Modification provided for principal payments of $1,743.88 and $538.14 in taxes and insurance, for a total of $2,282.02 per month. (Dep. of C. Butano, 59:3-13 & Ex. F; Interrogatory Answer No. 3).

**RESPONSE: Admitted.**

8. On May 3, 2011, Butano drafted a letter to Wells Fargo that states the following:
I am writing this letter to explain the unfortunate circumstances that have cause[d] us to fall behind on our mortgage and even found ourselves in bankruptcy. We have and will do everything in our power to make ends meet but we have fallen short and we respectfully ask that you consider working with us to modify our loan. (Dep. of C. Butano 41:1-23 & Ex. H (letter)).

**RESPONSE: Admitted.**

9. At that time, Butano was behind on his loan payments. (Dep. of C. Butano 44:20-22).

**RESPONSE: Admitted.**

10. In May 2011, Butano signed a document entitled "Special Forbearance Agreement." (Dep. of C. Butano 47:17-48:4, Ex. J ("Special Forbearance Agreement"); Interrogatory Answer No. 3).

**RESPONSE: Admitted.**

11. With respect to the Special Forbearance Agreement, Butano "didn't read the whole thing." (Dep. of C. Butano 49:1). This document is one page long.

**RESPONSE: Denied, "I didn't read the whole thing" was in reference to Mr. Butano not being given the opportunity to read the entire document when the document was introduced at the deposition and not as Defendant has interpreted this statement. And Mr.**

**Butano disputes that he only signed one document. Mr. Butano signed several pages of documents at the home preservation workshop (See attached Deposition of Christopher Butano, excerpts attached hereto as Exhibit A, 49:1-3; 30:3-5)**

12. Paragraph 2 of the Special Forbearance Agreement states:
> Payments must be made strictly in accordance with the enclosed payment schedule and forbearance agreement conditions. This plan is an agreement to temporarily accept reduced payments or maintain regular monthly payments during the plan specified below. Upon completion of this plan, the loan must be brought current or an arrangement to satisfy the arrearage must be executed.

(Dep. of C. Butano, Ex. J).

**RESPONSE: Admitted.**

13. Paragraph 3 of the Special Forbearance Agreement states: "The lender is under no obligation to enter into any further agreement, and this forbearance shall not constitute a waiver of the lender's right to insist upon strict performance in the future." (Dep. of C. Butano, Ex. J).

**RESPONSE: Admitted.**

14. Paragraph 4 of the Special Forbearance Agreement states:
All of the provisions of the note and security instrument, except as herein provided, shall remain in full force and effect. Any breach of any provision of this agreement or non-compliance with this agreement, shall render the forbearance null and void…. The lender, at its option, may institute foreclosure proceedings according to the terms of the note and security instrument without regard to this agreement. (Dep. of C. Butano, Ex. J).

**RESPONSE: Admitted.**

15. Paragraph 5 of the Special Forbearance Agreement states: "The due date of your loan will continue to be reported to the credit bureaus on a monthly basis. While this forbearance plan is in effect, there will be a special notation: 'Paying under a partial payment agreement.'" (Dep. of C. Butano, Ex. J).

**RESPONSE: Admitted.**

16. Paragraph 7 of the Special Forbearance Agreement states: "There is no 'grace period' allowance in this agreement. All payments must be received on or before the agreed due date. If any payment is not received before the due date, the agreement will be void and the total delinquency, including fees, will be due immediately." (Dep. of C. Butano, Ex. J).

**RESPONSE: Admitted.**

17. The Special Forbearance agreement set forth the following schedule of payments:
(1) a $190.00 payment due by June 1, 2011; (2) a $2,119.85 payment due by July 1, 2011; (3) a $2,119.85 payment due by August 1, 2011; and (4) a $2,119.85 payment due by September 1,

2011. (Dep. of C. Butano, Ex. J).

**RESPONSE: Admitted.**

18.  Butano did not make timely payments under the Special Forbearance Agreement. (Dep. of C. Butano 69:4-7, 78:7-10).

**RESPONSE: Denied. Mr. Butano made payments that may have been a "few days late" but not untimely. (Dep. of C. Butano, 69:4-7; 76 – 17-23)**

19. Upon reading the Special Forbearance Agreement, Butano now recognizes that the Special Forbearance Agreement "did not permanently modify [his] mortgage payments." (Dep. of C. Butano 70:15-18).

**RESPONSE: Denied. Mr. Butano signed this and other documents because they included a loan modification. (Dep. of C. Butano, 30:3-8, 48:12-15, 70:15-18).**

20. When Butano later spoke with Wells Fargo, they did not tell him that they would not "honor" his modification, but rather that he did not "qualify" for a modification. (Dep. of C. Butano 75:13-15).

**RESPONSE: Admitted.**

21. Other than the previously described agreements, Butano did not sign any other forbearance agreements or loan modification agreements. (Interrogatory Answer No. 3; Dep. of C. Butano 60:1-24).

**RESPONSE: Denied. Mr. Butano stated in his interrogatories that there was a modification in November 2010. He has not denied this fact in his deposition. (See Def. Exhibit 4, Interrogatory Answer No. 3; Dep. of C. Butano 60:1-24)**

## PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED MATERIAL FACTS

COMES NOW, Plaintiff, Chris Butano, by and through counsel, and for his Statement of Uncontroverted Material Facts and states:

1. The Plaintiff, Christopher Butano ("Mr. Butano") moved into the house at 5203 Shetland Drive, Weldon Spring, MO 63304 on September 1, 1994. (Deposition of Christopher Butano, 12:24)

2. He married his wife, Tammy Butano, in November 2005. (Dep. of C. Butano, 5:21-24)

3. In 2006, he wanted to include her on his home loan so he refinanced his home with the Defendant, Wells Fargo, N.A. ("Defendant"). (Dep. of C. Butano, 14:8-11; 16:9-15, Defendant Statement of Facts No. 1)

4. Unfortunately, Mr. Butano ran into hard times in 2007. His industry, car sales and maintenance, went "basically to hell in a handbasket" and his earnings went down "30 to 50 percent." He also owned an airplane which was involved in an accident that caused him to lose well over $100,000. (Dep. of C. Butano, 22:11-99)

5. These events led to Mr. Butano filing for bankruptcy in January of 2008. (Dep. of C. Butano, 22:6-8)

6. Mr. Butano and Defendant entered into a loan modification agreement, with leave of the Bankruptcy Court, in July 2010. (Defendant Statement of Facts No. 5)

7. However, later the Defendant told Mr. Butano this agreement was no good and Mr. Butano had to start over. (Dep. of C. Butano, 31:21-22)

8. After speaking with the Defendant's representatives on the phone on numerous occasions, Mr. Butano received a letter inviting him to a home preservation workshop

which was held at a hotel near the Lambert Saint Louis Airport. (Dep. of C. Butano, 42:9-16)

9. In order to attend the workshop, Mr. Butano wrote a letter detailing his hardship. (Dep. of C. Butano, 42:1-4)

10. In May 2011, Mr. Butano attended the home preservation workshop held by the Defendant. (Dep. of C. Butano, 30:3-11)

11. At this home preservation workshop, Mr. Butano signed multiple documents. (Dep. of C. Butano, 30:3-5)

12. He signed these documents because they included a loan modification. (Dep. of C. Butano, 30:3-8; 48:12-15; 70:15-18)

13. Mr. Butano made payments in May 2011, July 2011, August 2011, September 2011, October 2011, December 2011, and January 2012. (Dep. of C. Butano, 69:8-13; See Bank of America Records ("Bank Records"), attached hereto as Exhibit B).

14. However, Defendant called Mr. Butano on December 23, 2011 and told Mr. Butano that even though they saw he had made his payments over a year prior to December 23, 2011 he did not "qualify" for the modification program. (Dep. of C. Butano, 65:12-15)

15. Mr. Butano communicated with Well Fargo since 2006 including at least 8/25/10, 9/3/10, 9/27/10, 10/06/10, 10/13/10, 11/10/10, 11/22/10, 1/19/11, 2/8/11, 2/14/11, 4/12/11 (Dep. of C. Butano, 55:16-22)

Dated: May 22, 2015                                                                    Respectfully Submitted,

                                                     KASPER LAW FIRM, LLC

By: /s/  Aaron K. LaPlante
Kevin J. Kasper MO #52171
Aaron K. LaPlante MO #66029
3930 S. Old Hwy 94, Ste. 108
St. Charles, MO 63304
Ph: 636-922-7100
Fax: 866-303-2874
Email: kevinkasper@kasperlawfirm.net
aaronlaplante@kasperlawfirm.net

ATTORNEYS FOR PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was electronically filed on May 22, 2015 with the Clerk of the Court using the Court's online CM/ECF system, which will serve notice upon all counsel of record.

/s/     Aaron K. LaPlante<br>Attorney for Plaintiff