# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER BUTANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13CV1652 HEA |
| | ) | |
| WELLS FARGO, N.A., | ) | |
| | ) | |
| Defendant, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. [Doc. No. 20]. Plaintiff has filed a Response in opposition to the Motion. [Doc. No. 25]. Defendant has filed a Reply. [Doc. No. 28]. For the reasons set forth below, the Motion is granted.

## Factual Background

On July 12, 2006, Plaintiff obtained from Wells Fargo a 30-year adjustable rate mortgage loan for his personal residence at 5203 Shetland Drive in Weldon Spring, Missouri. The initial interest rate was 8.250%, with initial monthly payments of $2,231.27.

In January 2008, Plaintiff filed for Chapter 13 bankruptcy. Plaintiff alleges that by March 2010, due to increased interest, the monthly payments on his mortgage had risen to $2,804.61. With leave of the bankruptcy court, Plaintiff entered into a loan modification agreement with Defendant in July 2010.[1] The July 2010 loan modification provided for monthly payments of $2,282. Plaintiff's bankruptcy action was discharged on August 19, 2010 for failure to make plan payments.

According to the record before the Court, Plaintiff made no payments between the time of the July 2010 loan modification agreement and May 2011. Nor does he recall making any

---

[1] Plaintiff's Complaint alleged that Defendant proposed, and Plaintiff accepted, a modification on March 29, 2010. Plaintiff has since admitted that the parties entered into no such agreement. [Doc. No. 24 at ¶ 4].

payments during this period. [Doc. No. 27-1 at 2–5]. By May 2011, Plaintiff alleges that his monthly mortgage payments had increased to $3,397.14 due to an unpaid mortgage shortage, unpaid hazard insurance, and unpaid county taxes.

In a May 6, 2011 letter, Defendant offered Plaintiff a "Special Forbearance Agreement," which set forth the following schedule of payments (1) a $190 payment due by June 1, 2011; (2) a $2,119.85 payment due by July 1, 2011; (3) a $2,119.85 payment due by August 1, 2011; and (4) a $2,119.85 payment due by September 1, 2011. [Doc. No. 22-1 at 61–62]. Plaintiff accepted the offer.

Plaintiff made all four of the payments called for in the Special Forbearance Agreement, though the latter three were, on average, eighteen days late. [Doc. No. 24-2]. He made additional payments of $2,119.85 in October and December of 2011. [*Id.*]. Plaintiff claims that he received a call from a representative of Defendant on December 23, 2011, informing him that he did not qualify for a modification, but that they would let him try again. [Doc. No. 27-1 at 15, Plaintiff's Depo, at 75:11–15]. Plaintiff made another payment, in the amount of $100 on January 18, 2012, in order to "show a payment on the record." [Doc. No. 24-1 at 14]. He has not made a payment since. [*Id.*].

Defendant eventually began foreclosure proceedings on the property.

**Procedural Background**

Plaintiff filed this action on August 21, 2013, invoking the Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a)(1), and bringing causes of action for 1) breach of contract, 2) promissory estoppel, and 3) fraudulent misrepresentation. By Opinion, Memorandum and Order issued on July 10, 2014, the Court denied Defendant's Motion to Dismiss for failure to state claim. After conducting discovery, Defendant filed its Motion for Summary Judgment on April 30, 2015.

## Summary Judgment Standard

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Hitt v. Harsco Corp.*, 356 F.3d 920, 923 (8th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson*, 477 U.S. at 248; *Woods*, 409 F.3d at 990.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health Sys.*, 348 F.3d 732, 733–34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). "[A] complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The Court will review the facts in this case with the stated standards in mind.

## Discussion

**A.     Breach of Contract**

Count I of the Complaint is brought for breach of contract. Therein, Plaintiff alleges that, at his request, Defendant offered to modify the mortgage, Plaintiff accepted the offer, and both parties gave adequate consideration. Count I further alleges that Defendant refused to abide by its promise of a permanent modification.

Under Missouri law, a breach of contract action requires a plaintiff to allege the existence and terms of a valid and enforceable contract between the plaintiff and defendant; the rights of the plaintiff and the obligations of the defendant under the contract; breach of the contract by the defendant; and damages suffered by the plaintiff due to the breach. *Holmes v. Kansas City Mo. Bd. of Police Comm'rs*, 364 S.W.3d 615, 622 (Mo. Ct. App. 2012); *Teets v. American Family Mut. Ins. Co.*, 272 S.W.3d 455, 461 (Mo. Ct. App. 2008); *see also Cento v. Allstate Prop. & Cas. Ins. Co.*, 2013 WL 64752, *3 (E.D. Mo. Jan. 4, 2013); *Bakhtiari v. Al–Khaledy*, 2011 WL 6945107, *4 (E.D. Mo. Dec. 30, 2011); *Midwest Special Surgery, P.C. v. Anthem Ins. Companies*, 2010 WL 716105 at *6 (E.D. Mo. Feb. 24, 2010). A party "fails to state a claim for breach of contract [if] it does not set out [the claimant's] rights or [the defendant's] obligations under the contract." *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 941 (Mo. Ct. App. 1996). Vague references to unspecified "agreements" are insufficient to state a claim for breach of contract. *Midwest Special Surgery*, 2010 WL 716105, at *6.

With regard to Plaintiff's breach of contract claim, the Court explained in its Opinion denying Defendant's Motion to Dismiss for failure to state a claim:

> Defendant urges dismissal for failure to state a claim arguing that Plaintiff has alleged a forbearance agreement which does not equate with a modification of

> Plaintiff's loan. Defendant is in essence arguing that the facts of this case do not support Plaintiff's claims. This argument however is in no manner ripe for consideration. A motion to dismiss for failure to state a claim tests the sufficiency of the Complaint; the Court's role at this time is to determine whether Plaintiff's Complaint sets out a claim for relief.
>
> . . . .
>
> While the evidence in this matter may ultimately translate into facts which may establish that the "loan modification" was realistically a forbearance agreement which did not entitle Plaintiff to a permanent modification, the Court cannot at this time so find. Plaintiff has set out the essential allegations for stating a claim for breach of contract for the purposes of Rule 12(b)(6). He alleges offer, acceptance and consideration-elementary Hornbook law. Without the actual documentation setting out the terms of the parties' agreement, the Court cannot assume, as Defendant urges, that the modification was not sufficient to modify Plaintiff's loan. The motion will be denied at this time.

[Doc. No. 10 at 5–6, 7–8].

The factual record before the Court demonstrates that the May 6, 2011 Special Forbearance Agreement was not a loan modification. Rather, it was a temporary agreement, limited in scope, to afford Plaintiff the opportunity to stave off foreclosure while making agreed upon reduced payments for a set period of time. The two page document, which is bereft of fine print, proposes the four payments described above.[2] The document unambiguously states that it is "not a waiver of the accrued or future payments that become due, but a period for you to determine how you will be able to resolve your financial hardship. Any payments received will be applied to the delinquent payments on the loan." [Doc. No. 22-1 at 61]. Further, the document unambiguously states: "This plan is an agreement to temporarily accept reduced payments or maintain regular monthly payments during the plan specified below. Upon completion of this plan, the loan must be brought current or an arrangement to satisfy the arrearage must be executed." [*Id.* at 62].

---

[2] The Special Forbearance Agreement indicates that the parties previously agreed to the terms of the agreement. [Doc. No. 22-1 at 61] ["As agreed, you have promised to pay the amounts shown below by the dates indicated."].

Plaintiff alleges that "in its proposed modification that it signed and sent on May 6, 2011, Wells Fargo represented that if Butano agreed to the terms, Wells Fargo would modify the mortgage to reduce the monthly payment amount to $2,119.85." [Doc. No. 1 at ¶ 39]. This is a complete mischaracterization of the May 2011 Special Forbearance Agreement, but was enough to stave off dismissal on the pleadings alone. [*See also id.* at ¶ 12] ["On May 6, 2011, Wells Fargo again agreed to a modification under forbearance, reducing Butano's monthly payments to $2,119.85. But again, when Butano accepted, Wells Fargo did not make the promised modification, resulting in further 'deficiencies.'"]. Plaintiff describes the May 2011 Special Forbearance agreement with more accuracy elsewhere in the Complaint. [*Id.* at ¶ 3] ["On May 6, 2011, Wells Fargo, servicer on Plaintiff's home mortgage, offered Plaintiff a "Special Forbearance Agreement" lowering Plaintiff's monthly mortgage payments during a time of *temporary* financial hardship."] [emphasis added].

In his Response to Defendant's Motion for Summary Judgment, Plaintiff takes exception to "Defendant['s] argu[ment] that the Special Forbearance Agreement is the only document Mr. Butano signed and it only entitled him to a temporary reprieve from the Defendant's inflated payments and interest rate hikes." [Doc. No. 25 at 3]. Plaintiff contends that, because he "testified [at his deposition] that this document was one of a number of documents he signed [on May 6, 2011 at a 'home preservation workshop'], and the reason why he signed it was because he would be receiving a loan modification," a genuine issue of material fact exists as to the terms of the Special Forbearance Agreement. [*Id.*]. However, notwithstanding the fact that Plaintiff appears to be attempting to amend his Complaint through his deposition testimony and Response to Defendant's Motion for Summary Judgment, an assertion that Plaintiff signed other documents in conjunction with the Special Forbearance Agreement which he "believes"[3]

---

[3] [*See* Doc. No. 24-1, Plaintiff's Depo at 30:3–8].

promised a loan modification is wholly insufficient to defeat summary judgment, particularly given the unambiguous terms of the Special Forbearance Agreement. Further, in contrast to the additional documents Plaintiff allegedly signed, the Special Forbearance Agreement is in the record before the Court. *See Celotex*, 477 U.S. at 323; *Putman*, 348 F.3d at 733–34; *Midwest Special Surgery*, 2010 WL 716105, at *6.

Similarly, Plaintiff's newfound reliance on a purported November 2010 loan modification—which was never mentioned in his Complaint—is insufficient to defeat summary judgment given that Plaintiff has failed to submit the alleged modification to the Court or even describe its terms. [*See* Doc. No. 22-4 at 3, Plaintiff's Answers to Defendant's Interrogatories]. Finally, Plaintiff's barren assertion to have "communicated" with Defendant numerous times, "including at least 8/25/10, 9/3/10, 9/27/10, 10/6/10, 11/10/10, 1/19/11, 2/8/11, 2/14/11, [and] 4/12/11" does not create a genuine issue of material fact as to Plaintiff's claims, given that Plaintiff does not remember the substance of these "communications." [Plaintiff's Depo at 55:23–57:11; 57:19–58:12].

On the record before the Court, the parties entered into the Special Forbearance Agreement, Plaintiff made the required payments (albeit in an untimely fashion), Plaintiff made two additional reduced price payments (ostensibly without approval to continue paying at a reduced rate), Plaintiff made one more payment of $100, and then Plaintiff stopped paying his mortgage. Foreclosure followed. Plaintiff has failed to demonstrate that a genuine issue of fact exists to the question of whether Defendant is in breach of the Special Forbearance Agreement, or any other contract. Accordingly, Defendant is entitled to judgment as a matter of law with regard to Plaintiff's breach of contract claim.

**B.      Promissory Estoppel**

Count II of the Complaint is brought under a promissory estoppel theory. It alleges that Defendant promised Plaintiff that if he agreed to the offered modification and fully complied, Defendant would accept the reduced payments going forward for the life of the loan.

Under Missouri law, a claim for promissory estoppel allows the courts to enforce a promise on equitable grounds even if the parties have not entered into a contract. *The 1861 Group, LLC v. Wild Oats Markets, Inc.*, 728 F. Supp. 2d 1052, 1059 (E.D. Mo. 2010) (citing *City of St. Joseph v. SW Bell Tel.*, 439 F.3d 468, 477 (8th Cir. 2006)). Promissory estoppel requires: 1) a promise; 2) on which a party relies to his or her detriment; 3) in a way the promisor expected or should have expected; and 4) resulting in an injustice that only enforcement of the promise could cure. *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 440–41 (8th Cir. 2013); *The 1861 Group*, 728 F. Supp. 2d at 1059; *Clevenger v. Oliver Ins. Agency*, 237 S.W.3d 588, 590 (Mo. 2007); *Glenn, MD v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012); *see also Meng v. CitiMortgage*, 2013 WL 1319008, at *7 (E.D. Mo. Mar. 29, 2013).

The promise giving rise to the claim for promissory estoppel must be definite and the promise must be made in a contractual sense. *Clevenger*, 237 S.W.3d at 590 (citation omitted).

> A promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promisee in understanding that a commitment has been made. A promise is the promisor's expression of an intention to bring about a specified result in the future. The promise must be definite and made in a contractual sense. A supposed promise that is wholly illusory or a mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance.

*Freitas*, 703 F.3d at 440. Finally, "the promise element cannot be based on preliminary negotiations and discussions or an agreement to negotiate the terms of a future contract." *The 1861 Group*, 728 F. Supp. 2d at 1059–60 (citing *Prenger v. Baumhoer*, 939 S.W.2d 23, 27 (Mo. Ct. App. 1997)). Missouri law requires "a promise be as definite and delineated as an offer under contract law." *Freitas*, 703 F.3d at 440.

Plaintiff alleges that he was promised a permanent modification, that he relied on the promise and that he suffered damages as a result of Defendant's failure to satisfy its promise. However, for the reasons discussed above, Plaintiff has failed to create a genuine issue of material fact that he was promised a loan modification. Accordingly, defendant is entitled to judgment as a matter of law with regard to Plaintiff's promissory estoppel claim as well.

C.     **Fraudulent Misrepresentation**

Count III of the Complaint is a claim for fraudulent misrepresentation, in which Plaintiff claims that in the proposed modifications that Defendant signed and sent to Plaintiff, Defendant intentionally misrepresented to Plaintiff that if he agreed to the terms, Defendant would modify the mortgage to reduce the monthly payment amounts. Plaintiff alleges that defendant had no intention of modifying Plaintiff's mortgage.

The elements of fraudulent misrepresentation are: a representation; its falsity; its materiality; the speaker's knowledge of its falsity or ignorance of its truth; the intention of the speaker that it should be acted on by the person in the manner reasonably contemplated; the hearer's ignorance of the falsity of the representation; reliance on the representation being true; the hearer's right to rely on the representation; and injury that is consequently and proximately caused thereby. *Freitas*, 703 F.3d at 438–39. A claim for fraudulent representation must be pled with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. "'[R]ule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Id.* (quoting *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).

As with Plaintiff's other claims, he has failed to create a genuine issue of material fact that he was promised a loan modification. Thus, there is no false representation in the record before the Court. There are not only required elements for a fraudulent misrepresentation claim,

but are elements which must be pled with particularity. *Id.* Accordingly, Defendant is entitled to judgment as a matter of law as to Plaintiff's fraudulent misrepresentation claim.

## Conclusion

Based on the foregoing analysis, the Court will grant Defendant's Motion for Summary Judgment and enter judgment in Defendant's favor.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 20] is **GRANTED.**

An appropriate Judgment will accompany this Opinion, Memorandum and Order.

Dated this 11th day of August, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE